**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMB EQUIPMENT, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: |
| ) | |
| JET SUPPORT SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

EMB Equipment, LLC, by its attorneys, for its amended complaint against Jet Support Services, Inc., alleges as follows:

**PARTIES**

1. Plaintiff, EMB Equipment, LLC ("EMB" or Plaintiff) is a Florida limited company with its principal place of business in Jupiter, Florida. EMB is a citizen of the State of Florida.

2. EMB is a single member LLC.

3. Edward Brown is the only member of the Plaintiff.

4. EMB has only one manager.

5. Edward Brown is the only manager of the Plaintiff.

6. Edward Brown's residence is located at 152 Bears Club Drive, Jupiter, Florida.

7. Edward Brown is a Florida resident and citizen.

8. Both EMB and Mr. Brown have maintained Florida residency from the inception of EMB in 2012 through the present.

9. Defendant Jet Support Services, Inc. ("JSSI") is a Delaware corporation with its principal place of business at 180 Stetson Avenue, 29th Floor Chicago, Illinois. JSSI is a citizen of Illinois.

10. JSSI is in the business of providing, managing, and administering programs for the repair and maintenance of turbine engines to owners and operators of jet aircraft.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

12. Venue is proper in this Court pursuant to the forum choice and venue clause of the agreement between the parties (See, Exhibit 1 at paragraph 5.10).

## FACTUAL ALLEGATIONS

13. JSSI and EMB entered into the JSSI Complete Engine (on-condition) Maintenance Control Contract, Contract number JSSI0049324, ("the contract"). The contract provided coverage on EMB's Gulfstream 550 aircraft (Tail Number N1AE), the Contract is attached as Exhibit 1.

14. The Contract covers two engines, Engine 1 (serial number 15275) and Engine 2 (serial number 15274) and the airframe (serial number 5088) of the Gulfstream G 550 aircraft.

15. In order to enter this Contract, EMB was required to pay a one-time enrollment fee and an initial engine inspection fee.

16. Additionally, EMB is required to pay a fee to JSSI on a monthly basis, for each engine covered under the Contract ($18,856.52 for each engine), there is a pre-determined charge per hour of actual engine operation ($646.52).

17. The monthly fee due to JSSI is calculated based upon the number of hours of operation for the engine multiplied by the hourly rate. In exchange for those payments, JSSI provides funding for engine maintenance services performed by third-party providers.

18. The types of services covered under the EMB Contract falls into two general categories: (1) scheduled maintenance, including periodic engine overhauls and hot section inspections; and (2) unscheduled maintenance events, including engine failures.

19. Jet aircraft engines are required to be overhauled according to manufacturers' specifications and the schedule for such overhauls is based upon cumulative hours of operation and/ or engine cycles. A single overhaul of a jet engine can cost thousands of dollars.

20. Under the terms of the EMB Contract, if JSSI's customer has paid for all hours of the engine's operation leading up to the performance of maintenance services, then JSSI promises to pay the full cost of those services.

21. EMB's G 550 aircraft was out of service beginning on March 27, 2023 and was located at a facility located in Savannah Georgia which is owned, operated, and maintained by Gulfstream aviation.

22. The aircraft had a damaged engine that required a complete overhaul. The engine overhaul commenced in June 2023.

23. This event was covered per the contract with JSSI and it was expected that an interim engine would be fitted on the aircraft so that it could continue to operate during the time its engine was being serviced.

24. However, no engine was ever made available for EMB, even though EMB paid thousands and thousands of dollars to JSSI for this very purpose.

3

25. More than eight months passed and no rental engine was fitted onto the aircraft and it could not operate during the time engine maintenance was performed.

26. Additionally, EMB provided a potential solution with another engine, but for whatever reason, this engine was unacceptable to JSSI.

27. Additionally, on information and belief, other rental engines were available to JSSI, but JSSI decided to not provide the same.

28. Pursuant to the Contract, EMB provided JSSI with its credit card information and authorized JSSI to charge EMB on a monthly basis.

29. JSSI charged EMB's credit card on several occasions during the time period between 2022 and 2023 months.

30. Then JSSI ceased charging card even though it was on file with JSSI and available to be charged.

31. EMB's credit card remained valid during this time period.

32. JSSI's allowed EMB's debts to accumulate.

33. On information and belief, JSSI charged EMB on a monthly basis whenever it wanted in order to make payments current.

34. As EMB complained to JSSI about the lack of solution for some unknown reason, stopped charging EMB's credit card in June, July and August 2023 even though JSSI knew that the aircraft was grounded and that there were no flight hours during those months.

35. Instead of simply charging the credit card for each engine ($18,856.52 for each engine) as it was authorized to do, JSSI allowed a debt to accumulate to harass EMB and to create a potential counter claim in litigation.

36. Moreover, JSSI has refused to adequately document its payments for services to the aircraft or its parts.

37. It is unclear to EMB that JSSI has complied with the terms of Section 1.5(b) of the agreement, documenting and reimbursing full credits for charter flights.

38. Due to JSSI's failure to perform its duties,

    a. EMB cannot properly account for its debts, assets and liabilities;
    b. EMB was unable to operate its aircraft;
    c. EMB lost profits.

39. EMB seeks leave to submit this balance of one hundred and seventy-two thousand nine hundred forty-seven dollars and eighty cents ($172,947.80) to the Court registry. A motion seeking leave to submit funds into the Court registry will be forthcoming.

## COUNT I
## Breach of Contract

40. The allegations of paragraphs 1 through 39 are repeated and realleged as if fully set forth in this paragraph.

41. JSSI has breached the Contract in at least the following ways:

    a) JSSI has failed and refused to provide and/or pay for parts and labor for scheduled maintenance submitted by EMB, as JSSI is obligated to do pursuant to Section 1.1(a) of the Contract;

    b) JSSI failed and refused to provide and/or pay for parts and labor for unscheduled maintenance EMB submitted as JSSI is obligated to do pursuant to Section 1.1(b) of the Contract;

    c) JSSI failed and refused to provide rental engines pursuant to Section 1.5(a) of the Contract.

        d)      JSSI has failed to act in good faith in terms of the performance of its obligations under the agreement.

42.    JSSI's breaches of the Contract have caused EMB to be damaged in an amount in excess of $100,000.

WHEREFORE, EMB prays that this Court enter judgment in its favor and against JSSI, awarding compensatory damages in an amount to be determined at trial, and grant such other and further relief as may be just under the circumstances.

### COUNT II
### Negligent Misrepresentation

43.    The allegations of paragraphs 1 through 39 are repeated and realleged as if fully set forth in this paragraph.

44.    JSSI's represented that it would be able to provide rental engines to EMB equipment when it had no ability or intention of providing the same, such statements negligent misstatements of fact.

45.    JSSI's actions as alleged have caused EMB to be damaged, fraudulently being induced into its contract with JSSI and has been damaged financially.

46.    JSSI had EMB's credit card on file and used the same on a monthly basis to pay outstanding balances on the contract.

47.    JSSI acted in bad faith and refused to charge the EMB credit card on file for the months of June, July and August 2023, even though JSSI knew that there could not be flight hours on the aircraft because it lacked engines and was grounded during the months of June, July and August.

WHEREFORE, EMB prays that this Court enter judgment in its favor and against JSSI, awarding compensatory damages in an amount to be determined at trial, and grant such other and further relief as may be just under the circumstances.

### COUNT III
### Equitable Accounting

48. The allegations of paragraphs 1 through 39 are repeated and realleged as if fully set forth in this paragraph.

49. The term "account balance" is defined in the agreement as

> ACCOUNT BALANCE means an amount equal to the product of (a) the total amount of payments received by JSSI hereunder, less the total amount of Management Fees, multiplied by (b) an amount not less than 75%, less (c) the aggregate amount paid by or on behalf of JSSI for all maintenance and repair covered under this Contract, other than amounts attributed to Unscheduled Maintenance, less (d) any expenses specifically permitted under the Trust Agreement and allocated to this Contract, less (e) any taxes allocated to this Contract, plus (f) the account balance (which may be a negative number) under all prior contracts, if any, of which this Contract is a renewal or from which this Contract is transferred. All amounts calculated under this Contract shall be determined in accordance with the Trust Agreement and as determined by JSSI in its reasonable discretion from time to time. For the purposes of an On-Condition Program, the aggregate amount distributed for Unscheduled Maintenance means the aggregate amount distributed for Unanticipated Failure(s).

(See, Exhibit 1 at "Exhibit B", Defined terms, item 2)

50. Pursuant to the agreement, Plaintiff has an interest in the account balance. This balance can be transferred (see, Section 3.2 of the Contract), or sold (see, Section 3.3 of the Contract), or could result in a credit to Plaintiff.

51. Additionally, it is unclear that JSSI has complied with the terms of Section 1.5(b) of the agreement, documenting and reimbursing full credits for charter flights.

52. Despite requests for detailed information concerning payments that make up the account balance, the cost of repairs and the costs of charters, information provided thus far is

insufficient for EMB is unable to ascertain the amount owed or the amount that should otherwise be credited.

53. Plaintiff EMB is unable to ascertain the amount that JSSI paid to others under the agreement.

54. Plaintiff EMB is entitled to equitable accounting from JSSI of the amounts utilized to determine the account balance and the credits for charters under the agreement.

WHEREFORE, Plaintiff requests that the Court determine that it is entitled to an equitable accounting from JSSI and to order a full and complete account be made and to order such other relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, EMB prays that this Court enter judgment in its favor and against JSSI, awarding compensatory damages in an amount to be determined at trial, and grant such other and attorneys' fees as provided by contract (Section 4.9) and, further relief as may be just under the circumstances.

Dated: February 6, 2025.          Respectfully submitted,

s/Craig G. Penrose
Craig Penrose
LAURIE & BRENNAN LLP
Two North Riverside Plaza, Suite 1750
Chicago, IL 60606, 312-445-8780
cpenrose@lauriebrennan.com

Leonard M. Collins
*(Pro Hac Vice motion pending)*
GRAYROBINSON, P.A.
301 S. Bronough Street, Suite 600
Tallahassee, Florida 32302
Telephone: 850-577-9090
leonard.collins@gray-robinson.com

*Attorneys for EMB Equipment, LLC*

8